# STRAFFORD,

## DECEMBER TERM, A. D. 1846.

## HART *v.* CHESLEY.

Exceptions to the sufficiency of the declaration cannot be taken on the trial before the jury, as the ground of a motion for a nonsuit.

A motion for a nonsuit may be sustained for a substantial variance between the declaration and the evidence. If the plaintiff has not proved the supposed cause of action substantially as alleged, he has no case to submit to the jury.

If the declaration allege a single promise, for the performance of two different things, founded upon an entire consideration and the evidence shows two promises, at different times, upon distinct considerations, that is a fatal variance.

If a testator, after the execution of his will, say to a grandson, who is a devisee, that he had intended to give a daughter her firewood during life, but had omitted it, and that he, the devisee, must provide her with firewood ; and thereupon the devisee promises that he will do so ; *quære,* whether the daughter can have any remedy upon such promise.

The insertion of a legacy to the daughter, in a codicil afterwards executed by the testator, which is declared to be in addition to what was previously given to her in the will, must, in the absence of evidence to the contrary, be regarded as a substitution for the provision which the testator had attempted to make for her through the promise of the devisee, so far as to supersede such promise.

The testator gave to his daughter the use and occupancy of a certain house, "so long as she remains a widow, and no longer, on the express condition only, that she remove into and live in said house, herself and family ; as it is not my will to give her the right to put any one but herself, or any family but her own, into the possession, use or occupancy of the same, or for her to have any of the rents and profits, if she does not reside there ;" and he gave to her the keeping of a cow, at the joint expense of two grandsons, who were devisees, so long as she remained a widow, on the same conditions. She took one of her daugh-

Hart *v.* Chesley.

ers and her husband and children, to live with her in the house, they all forming one family, and the circumstances being such that she might well require help;—*Held*, that this did not show a forfeiture of the right to have the cow kept.

ASSUMPSIT. The plaintiff alleged that the defendant, William J. Chesley, on the first of May, A. D. 1831, in consideration of a large amount of property, of the value of $10,000, devised to him by his grandfather, Benjamin Chesley, late of Durham, deceased, testate, among other things promised and agreed to and with the plaintiff, who is a daughter of said Benjamin, to furnish her, so long as she might remain a widow, good and sufficient keeping for one cow through summer and winter the year round, and while the said plaintiff resided at the Hill house, so called, in Durham; and to furnish for her sufficient wood and fuel, hauled and cut, during the same time, to wit, while the plaintiff remained a widow and resided at said Hill house. And the plaintiff averred that from said first day of May hitherto, she had remained a widow, and had resided at said Hill house. Yet the defendant had not furnished to her sufficient keeping for her cow during said time, nor wood and fuel hauled and cut for her, agreeably to his aforesaid promise and undertaking, but had wholly neglected the same.

The defendant moved for a nonsuit, upon the ground that no cause of action was set forth, but the court overruled the motion.

The plaintiff then offered in evidence the will of Benjamin Chesley, and two codicils thereto.

By the will, dated October 18, 1825, the testator devised to his two grandsons, William J. Chesley, the defendant, and Valentine Chesley, all his lands in Durham, with his mansion house, and other parcels of land, and certain articles of personal property. And to the plaintiff he gave the sum of $20 in addition to what he had already given her.

In the first codicil, dated December 30, 1828, he gave to the plaintiff, in addition to the provision made for her in his will, as follows : to wit, " the use and occupancy of my Hill house, so called, situate in said Durham, together with the use and occupancy of one half acre of land under and around said house, where she shall choose, so long as she remains a widow, and no longer, on the express condition only that she remove into and live in said house, herself and family, and not otherwise ; as it is not my will to give her the right at any time to put any one but herself, or any family but her own, into the possession, use or occupancy of the same, or for her to have any of the rents and profits, when she does not reside there. And I do also hereby give and bequeath unto her, the said Nancy Hart, keeping sufficient for one cow, to be wintered and summered and kept the year round for the said Nancy, at the joint expense of my two grandsons, William and Valentine, so long as she remains a widow, and no longer ; on the same condition only that she has the use and occupancy of the Hill house, when she resides there, and not otherwise. And I do enjoin it on my said two grandsons, William and Valentine, named in my said will, to see this part of my will faithfully executed."

In this codicil he altered a devise in his will to Sally Chesley, the mother of the defendant and Valentine Chesley, so that instead of a devise to her during life, with the remainder to them, the property was devised to her during her widowhood, with a like remainder.

The plaintiff introduced evidence tending to show that after the execution of this codicil, and on the same day, the testator said to the defendant and Valentine Chesley that he had omitted to put into his will a provision that they should furnish wood for the plaintiff, cut and hauled, and they agreed to do it ; and a subsequent acknowledgment of the defendant, in 1843, that he was to furnish the plaintiff with wood, and that he had at different times done so.

In the second codicil, executed June 24, 1830, after ratifying and confirming his will and codicil in all respects, except so far as they were revoked or altered by the last codicil, and revoking a provision of the will relating to the residue of his personal estate, he disposed of the latter by the following residuary clause, to wit : " all the rest and residue of the personal estate which I may die possessed of, after the payment of my debts and legacies, I do hereby give and bequeath unto my two daughters, Susannah Chesley and Nancy Hart, [the plaintiff] their executors and administrators, to their own use and benefit forever, to be equally divided between them, and in addition to the provision made for them in my said will and codicil thereto annexed."

The defendant denied any agreement or liability to furnish wood. It further appeared in evidence, that at the time of the decease of said Benjamin, the plaintiff had five daughters, and had previously lived at Saco ; that soon after the decease of said Benjamin she moved into the Hill house ; that James Twombly, who had married one of her daughters before the death of said Benjamin, with his wife, moved into said house with the plaintiff about ten or eleven years ago, and remained there through one winter ; that they again moved in in the spring of 1839, and remained there with their children till after the commencement of this action ; that they, with the plaintiff, made but one family, used one fire only, except when sick or when the plaintiff's other daughters were visiting her ; that they generally sat at one table, and found the provisions and wood together for the family, when the wood was not provided by the defendant ; that they used the cow together ; that the cooking was all done together ; that the plaintiff made it her home at the Hill house, kept her furniture there, and was not absent except when visiting her daughters or nursing the sick in the defendant's or other families ; that Twombly went there at her request,

never paid anything for rent or board, nor agreed to pay anything, and that the defendant never objected to his living with the plaintiff until the fall of 1843. It further appeared that the plaintiff's children were all daughters; that the spring from which she obtained water for the use of her family and her cow was from sixteen to twenty rods from the house; that in going to and from it, it is necessary to pass down and up a steep hill, and that her barn in which her cow was kept was at a considerable distance from the house.

It further appeared that on or about the 25th of May, 1844, the defendant entered into said Hill house, in the presence of witnesses, and told the plaintiff that she had forfeited her right there by taking other families into the house to reside, contrary to the provisions of her father's will, and that he had entered for the purpose of availing himself of the forfeiture.

Valentine Chesley died in 1834 or 1835, whether testate or not, did not appear.

The defendant had parted with his title to a considerable portion of the lands devised to him, before the commencement of this suit.

The evidence being closed, the defendant again moved for a nonsuit, because —

1. The evidence does not sustain the declaration, nor prove the contract set forth, but varies materially from it.

2. The plaintiff cannot be permitted to show two contracts under one count; the one express and verbal, for the wood; and the other for keeping a cow, being a contract arising out of the provisions of the will.

3. The action cannot be maintained against one alone.

4. The legacy is a charge upon the land, and the defendant, having parted with nearly all his interest, the suit cannot be maintained. It is not a personal charge.

The court overruled the motion.

The court charged the jury that the plaintiff had not,

by the facts stated in relation to the occupation of said Hill house, forfeited her right thereto; that if the jury were satisfied that the property devised in the will had been taken possession of and enjoyed according to the terms of the will, by the defendant, he would be liable for any deficiency in relation to keeping the cow, as required by the will; that if they should find that the defendant, in consideration that said Benjamin Chesley devised said lands to him, promised to provide wood, as alleged in the writ, and accepted and took possession of the property so devised, he would be liable for any deficiency in providing wood according to his promise, and that the making of the second codicil would not discharge the defendant from his liability to furnish said wood.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial.

*Christie,* for the defendant, cited 7 Johns. 87, *Comstock* v. *Smith;* 1 Caines 583, *Livingston* v. *Rogers;* 1 Wm's Saund. 264, n. 1; 1 Chitty's Pl. 297; Com. Dig., Assump., F, 6; 16 Johns. 281, *Edwards* v. *Davis;* Met. Yelv. 41, a, n. 1; 1 Smith's Lead. Cas. 67, note; 8 D. & E. 610; 2 Strange 933; 4 B. & Adolph. 433; 1 Keble 44, pl. 117; 8 Mod. 116; Hard 321; 1 Vent. 6; 1 Mees. & Wels. 126; 4 Kent. Com., 5th ed., 126; 5 Pick. 528; 10 Pick. 306, 463.

*J. Bell,* for the plaintiff, cited 2 N. H. Rep. 179, *Joy* v. *Simpson;* do. 385, *Walpole* v. *Marlow;* do. 316, *Sawyer* v. *Whittier;* 11 N. H. Rep. 226, *Sawyer* v. *Dame;* 1 Leon. 102; 2 Strange 933; 5 N. H. Rep. 99, *Grafton Bank* v. *Woodward;* 9 Cow. 115; 18 Johns. 420; 4 N. H. Rep. 251, *McMurphy* v. *Minot;* 8 N. H. Rep. 477, *Sperry* v. *Sperry.*

PARKER, C. J. On the trial of this action upon the general issue, a motion was made for a nonsuit, upon the ground that the declaration was insufficient in point of

law to sustain the action. It has been suggested in the argument that it is defective in several particulars; but we have not found it necessary to consider any question of this character, nor whether, if any defect did exist, it is of such a character as that it has been cured by a plea to the merits and a verdict (as is contended on the part of the plaintiff), because there is no demurrer before us, nor any motion in arrest of judgment; and an exception to the sufficiency of the declaration cannot be taken on a trial before the jury. On such trial the question is not whether the declaration is sufficient in point of law, but whether the plaintiff can make proof of the matters which he has alleged.

After the plaintiff's evidence had been put into the case, the defendant again moved for a nonsuit, upon the ground of a substantial variance between the declaration and the proof which the plaintiff had offered in support of it. This was a legitimate objection, and taken at the proper time. If well founded, it should have prevailed. If the plaintiff had not proved substantially such cause of action as he had alleged, he had nothing to submit to the jury.

The main ground of objection is, that no such entire contract as the plaintiff alleges was shown by the testimony; but that if a duty exists on the part of the defendant to keep a cow for the plaintiff, and also to furnish wood for her, it is not a single duty, but arises, according to the plaintiff's own showing, from two different contracts, the one express and the other implied, and which cannot be considered as made at the same time.

It appears to be clear, that if the plaintiff had a right to maintain an action for both of the matters alleged in the declaration—to wit, neglect to keep a cow, and to furnish wood—the right must be founded upon two different causes of action. If there are promises, express or implied, embracing these two different subjects, it is not as parts of the same contract.

In relation to the cow there is no express promise. It is not only an implied promise, but it did not arise until the devisees accepted the devise made to them in the will. A declaration upon it must allege that it arose at that time. The acceptance of the devise, after the death, is a part of the consideration upon which the implied promise arises to pay what stands charged upon it. This has been assumed as furnishing a consideration, and raising a promise, for the sake of giving the party a remedy at law, which he could otherwise have only in equity. 15 N. H. Rep. 281, *Pickering* v. *Pickering.*

But in relation to the wood, there is not only no such consideration alleged, but no such allegation could be made. The promise is an express promise, made before any acceptance of the devise, and while the will was ambulatory, and might have been revoked. The defendant, if charged, must be charged on his express promise, because there is nothing on which to imply the promise. There is no charge or provision in the will from which a promise can be implied. Without proof of the express promise which, if made, was long before the death of the testator, any claim for the wood must fail.

It is clear, therefore, that, assuming the right of the plaintiff to recover all she seeks to obtain, her claim is founded upon two different contracts, not only different in the fact that one is express and the other implied, but arising at different times, and on different states of fact. No entire consideration is shown. If there was a sufficient consideration to support each, there would be two different considerations; and this shows that the argument on the part of the plaintiff that the contract in regard to the wood was merely something superadded to the contract to keep the cow, the whole forming an entire obligation, must fail. There was nothing said about keeping the cow at the time of the conversation about the wood, and no obligation to keep her can be founded upon

what then took place, nor can what then took place be alleged as a part of the contract out of which the obligation to keep her arose. The alleged variance exists, therefore, and the verdict must be set aside.

The jury have found damages separately for the breach of the duty to keep the cow, and for not furnishing the wood, but they are not alleged as separate causes of action, and we cannot render judgment on the verdict for either alone.

We might stop here, but the argument has extended further, and we have considered it.

We do not determine whether an action at law can be sustained for not furnishing the wood. It is clear that the remedy, if any exists, is, according to the English jurisprudence, in equity, and not at law.

A defect of equity jurisdiction here led to the maintenance of actions at law for the recovery of legacies charged upon land. But there are evident objections to maintaining actions at law upon promises like that, in this case, to furnish the plaintiff with wood, which do not exist in cases where a legacy is charged upon land devised, and an implied promise is raised, upon the acceptance of the devise, to pay the charge upon it. The acceptance there shows an assent to undertake the performance of the thing charged, — the consideration for the promise, being the legacy, is secured to the party assuming the obligation, — and the law implies the promise to the party to whom the performance is to be made.

We have seen that the alleged promise to furnish the wood, in this case, is not one which is implied by the acceptance of the devise by the defendant, for the devise was subject to no such charge, nor was the promise made upon such acceptance. The consideration is not any thing that the party received when the promise was made, nor any thing secured to him, or placed in a situation that he could take it. Nothing was even promised to him, con-

stituting a case of mutual promises. Something was proposed to be given to him, but this was by an instrument which might be cancelled at any moment. And, moreover, the will, the instrument by which the gift was to be made, was fully executed before the conversation in which the supposed promise is alleged to have occurred, and the promise was not made upon any suggestion that the testator would alter his will, if the defendant declined to undertake the duty.

It was objected, in the argument for the defendant, that the consideration was executed, past, and therefore did not furnish the ground of an action. There might be more force in this if any thing had in fact passed at the time, but it was not so. And that very fact leads to another remark, which is, that if nothing had passed; if there was a mere intention to give by will; although the will was executed; yet as it was executed before the making of the promise, had at the time of its execution no connection with the promise, and was revocable at any time; — what benefit was secured to one party, or what damage was occasioned to the other, on which to raise a consideration. It is not like the case of an action by an executor to recover a legacy, to which it was likened in the argument: for in such case the action is founded upon the implied promise of the executor by reason of the assets in his possession, and his duty to pay; nor is it like a case where a provision is omitted in a will, because of a promise; nor yet like a case where one forbears to alter his will, by reason of a promise.

But we are of opinion that the subsequent codicil put an end to any claim, either in law or equity, upon the promise to furnish the wood. Suppose the testator intended to give her the right to have her wood, and, having accidentally omitted it, procured the promise of the defendant, as stated. When he subsequently made a further provision for her in the last codicil without

Hart v. Chesley.

inserting the provision respecting the wood, which he had before omitted; in the absence of evidence to the contrary the latter must be regarded as a substitution for what he had intended previously, even although it was not of the same character. Else, why, when he was making such other provision, did he not incorporate what he had before omitted, and thus make it secure, instead of leaving it to be effected by means of a collateral promise. If the first provision had been incorporated into the will, it might have been different; but it cannot fairly be inferred that he intended to leave what he had omitted, to be enforced by such an irregular arrangement, and to make a provision cumulative upon that, at a time when he was adding to his will, and could readily express in the codicil all his wishes and intentions. He expressly says, in the last clause, that the provision is made in addition to what is given in the will and first codicil, but says nothing of its being in addition to anything secured to her by any promise of the defendant.

We are further of opinion that, on the case before us, no forfeiture is shown of the right to the possession of the house, and to have the cow kept. The condition is, " that she remove into and live in said house, herself and family, and not otherwise." What follows is stated as a reason or explanation why he affixed the condition, " as it is not my will to give her the right at any time to put any one but herself, or any family but her own, into the possession, use, or occupancy of the same, or for her to have any of the rents and profits when she does not reside there." He did not intend that she should put in a tenant, or take rents and profits, without occupation. Who should constitute her family, he did not specify. Taking persons in to live with her as part of her family, in good faith, and under circumstances not indicating a colorable evasion; and temporary absences on visits, leav-

ing her family in the actual occupation, are not breaches of the condition.

What remedy the plaintiff has to enforce this duty of keeping the cow we do not determine.